# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **RANDY V. HAMILTON,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:10CV00009 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Vernon M. Williams, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Alexander L. Cristaudo, Assistant Regional Counsel, and Allyson Jozwik, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I vacate the final decision of the Commissioner of Social Security (the "Commissioner") and remand for further consideration.

I

Plaintiff Randy V. Hamilton filed this action challenging the Commissioner's decision to deny his claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-34 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Hamilton protectively filed for benefits on November 4, 2005, alleging that his disability began on August 27, 2005 following a heart attack. His claim was denied initially and upon reconsideration. An administrative law judge ("ALJ") held a hearing on July 19, 2007, at which both Hamilton, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Hamilton's claim on October 25, 2007. The Commissioner's decision became final when the Social Security Administration's Appeals Council denied Hamilton's request for review on December 18, 2009. Thereafter, Hamilton filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross-motions for summary judgment and have fully briefed the issues. The case is now ripe for decision.

II

Hamilton was 54 years old at the time of the ALJ's decision, a person closely approaching advanced age under the regulations. *See* 20 C.F.R. § 404.1563(d) (2010). Hamilton has completed a high school level of education. Before the alleged onset of his disability, Hamilton worked as a manager at a Virginia Alcoholic Beverage Control Board store.

Hamilton claims his disability is caused by a combination of ailments including his status post-myocardial-infarction, anxiety, depression, and degenerative disc disease. He presented medical records to the ALJ at the administrative hearing to substantiate his claim. After reviewing Hamilton's medical history, the ALJ determined that Hamilton suffered from the severe impairments of major depressive disorder, generalized anxiety disorder, coronary artery disease with stent placement, degenerative disc disease, and headaches. (R. at 22.) However, the ALJ concluded that none of these impairments qualified as any of the agency's listed disabilities, either alone or in combination. (R. at 30.)

Based on these findings, the ALJ held that Hamilton retained the residual functional capacity to perform light unskilled work. This work must be limited to simple, easy-to-learn, unskilled tasks with low job stress, requiring only occasional interaction with co-workers and supervisors and no face-to-face interaction with the public. (R. at 24.) Additionally, the ALJ found that Hamilton could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; could stand/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; occasionally climb ramps/stairs, but not ladders, ropes, or scaffolds; and could occasionally balance, stoop, kneel, crouch, and crawl.

During the hearing, the VE testified that someone with Hamilton's residual functional capacity would be able to perform the requirements of representative occupations requiring light exertion, such as a production grader, general production worker, or a material handler. According to the VE, there were approximately 13,600 such jobs in the region and over 577,000 in the national economy. Relying on this testimony, the ALJ concluded that Hamilton was able to perform work that exists in significant numbers in the national economy and was therefore not disabled.

Hamilton claims the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I agree.

### III

The plaintiff bears the burden of proving that he is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *See id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), (e) (2010); *see also Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985). If the claimant can perform work that exists in significant numbers in the national economy, then he does not have a disability. 20 C.F.R. § 404.1566(b) (2010).

I must uphold the ALJ's findings if substantial evidence supports them, and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ, not this court, to resolve evidentiary conflicts, including inconsistencies in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

A

Hamilton contends that the ALJ erred in failing to give proper weight to the opinions of Hamilton's treating physicians.

The opinion of a treating physician is generally accorded greater weight by the ALJ than an opinion from a non-treating physician. *See* 20 C.F.R. § 404.1527(d)(2) (2010). However, while "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citation and internal quotation marks omitted). The treating physician's opinion may only be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2) (2010). Despite the increased deference owed to treating physicians,

ultimate determinations regarding disability status are reserved to the Commissioner.[1] *See* 20 C.F.R. § 404.1527(e)(1) (2010) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p (July 2, 1996) ("However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

In this case, Hamilton's main source of documentation was the records of Virginia Baluyot, M.D., Hamilton's treating physician since November, 1991. Dr. Baluyot's records reflected treatment for a variety of physical problems, including hypertension, gastroesophageal reflux disease ("GERD"), hiatal hernia, lightheadedness, headaches, myocardial infarction, coronary artery disease, and progressive degenerative joint disease of the cervical spine. Dr. Baluyot also acted as Hamilton's primary treating physician for his alleged mental conditions, treating him with medication for conditions including chronic anxiety disorder with panic, nervousness, dislike of crowds, insomnia, chronic depression, nervous tic, and excessive worry, which she treated by medication.

---

[1] As both parties concede, the opinions of Hamilton's treating physicians that spoke to the ultimate status of his disability and his ability to work were properly not accorded controlling weight by the ALJ. Thus, notes by Hamilton's doctors excusing him from work and jury duty are not entitled to controlling weight. (R. at 173, 314-15, 340.)

Turning first to Hamilton's alleged physical conditions, the ALJ was not required to give Dr. Baluyot's conclusions controlling weight. The ALJ did not err in rejecting Dr. Baluyot's assessment of disability due to degenerative disc disease and coronary artery disease, because her opinion as to the severity of his condition was substantially inconsistent with the other evidence presented. By Hamilton's own admission, "he has no physical restrictions from his doctor except for diet, exercise, and medications." (R. at 25.) He is able to do light house work, walk and drive short distances, mow his own grass, and help care for his four-year-old grandson.

Significantly, Hamilton's treating cardiologist, A.R. Joshi, M.D., noted that Hamilton's heart condition was stable after his successful stent surgery and that Hamilton was progressing well in his recovery. Likewise, although consultative medical evaluations regarding Hamilton's degenerative disc disease showed he experienced severe pain from this condition, he possessed a normal range of motion in his lower and upper extremities, a reduced range of motion in his cervical and lumbar spine, normal strength, normal reflexes, and good grip strength, such that these evaluations showed his physical impairments did not prevent him from working. The evaluations of the state reviewing physicians were consistent with these findings. Thus, substantial evidence supports the ALJ's determination to give less weight to Dr. Baluyot's opinion regarding Hamilton's physical conditions.

However, as explained below, the ALJ's determination regarding Hamilton's mental impairments is not supported by substantial evidence.

B

Hamilton submitted records indicating ongoing psychiatric care from his primary care physician, the same Dr. Baluyot, since 1991. Dr. Baluyot treated Hamilton with medication, although she apparently did not refer him for an independent psychiatric evaluation until October, 2005. However, she opined in her submissions to the Virginia Retirement System ("VRS") that Hamilton was unable to work even in a "low stress" job, in part due to his ongoing difficulties with chronic anxiety and depression.[2] Dr. Amador, the psychiatrist who evaluated Hamilton on Dr. Baluyot's referral, came to the same conclusion.[3]

The ALJ explained that he rejected Dr. Baluyot and Dr. Amador's opinions regarding Hamilton's mental impairments because there was "little medical support" to support their conclusions. The ALJ noted that although Dr. Amador indicated that Hamilton was unable to work, Dr. Amador simultaneously prepared a report

---

[2] The VRS granted Hamilton disability retirement. However, its finding is not binding on the Commissioner, because the VRS system arises under a separate and distinct set of disability rules and regulations. *See* 20 C.F.R. § 404.1504 (2010).

[3] Hamilton's cardiologist, Dr. Joshi, also opined that stress would play a "significant role" in bringing on symptoms of Hamilton's heart conditions and that Hamilton "[would] not handle stress due to anxiety."

indicating that Hamilton's global assessment of functioning ("GAF") score was 55 to 60, indicating only moderate symptoms and limitations.[4] Dr. Amador also questioned whether Hamilton was being adequately treated with the medications prescribed by Dr. Baluyot.

The ALJ also gave little weight to the findings of Dr. Phillip Robertson, who performed a psychiatric evaluation in connection with Hamilton's VRS disability claim. Although Dr. Robertson questioned whether Hamilton was receiving the proper dosage of medication for his mental impairments, Dr. Robertson opined a GAF score of 65, indicating mild symptoms.

The ALJ explained his rejection of their opinions, noting, "[w]hat is puzzling is the fact that the claimant, even with the [evaluations of Dr. Amador and Dr. Robertson], has not sought treatment with a mental health professional in light of his claim that his nerves are so bad he cannot return to work. Treatment by his family physician [Dr. Baluyot] has not worked, if the claimant is to be believed." (R. at 27.)

---

[4] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

The ALJ instead afforded greater weight to the reports of the state agency reviewing psychologists, Dr. Perrott and Dr. Leizer. Although Dr. Perrott found that Hamilton had no "severe" mental impairment, Dr. Leizer disagreed. Dr. Leizer did find severe depression and anxiety, but not such that his limitations were significant enough to prevent Hamilton from working. The combination of these doctors' opinions led the ALJ to determine that while Hamilton did suffer from severe mental impairments, these impairments could be adjusted for by limiting Hamilton to light work involving low amounts of interaction with coworkers and the public. Thus, the ALJ found that Hamilton was not disabled.

Generally, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 643 (4th Cir. 2005) (citation omitted). However, the fact remains that "[i]n the absence of any psychiatric or psychological evidence to support [his] position, the ALJ simply does not possess the competency to substitute [his] views on the severity of the plaintiff's psychiatric problems for that of a trained professional." *Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D.W.Va. 1985). Although the ALJ's determination reflects an effort to limit Hamilton to work activities that would accommodate his severe mental impairments, there is not substantial evidence in the record to suggest that these limitations would suffice.

The treatment that Hamilton has received since 1991 for his mental impairments has come from his primary care physician, Dr. Baluyot. As a treating physician "able to provide a detailed, longitudinal picture of [the claimant's] medical impairment," her medical opinion should have been accorded great weight. 20 C.F.R. § 404.1527(d)(2); *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986). However, as the ALJ noted, both Dr. Amador and Dr. Robertson raised questions as to whether Hamilton's mental conditions were being adequately addressed by the medical treatment being provided by Dr. Baluyot. Likewise, the agency consultative physicians came to significantly conflicting opinions concerning Hamilton's condition and his ability to work.

Thus, significant evidence exists in the record to question the status and treatment of Hamilton's mental impairments. In this case, the fact that Hamilton did not seek additional treatment beyond the potentially inadequate long-term care being provided by his primary physician was not an appropriate basis for assuming he retained the functional capacity to perform light work. Rather this evidence should have prompted the ALJ to request an additional medical opinion.

1.     "If there is a basis for questioning the severity of the impairments, then the ALJ should order a consultative examination, not substitute his own lay opinion." *Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D.W.Va. 1985).

Here, given the hole in the record related to the adequacy and efficacy of Hamilton's treatment, there was not substantial evidence for the ALJ to sufficiently determine the severity of Hamilton's mental impairments or his resultant functional capacities under them. The ALJ should have ordered further examinations, as set forth in 20 C.F.R. § 404.1512(e), to determine whether Hamilton's current treatment is adequate or whether an adjusted treatment plan would produce a commensurate change in his residual functional capacities.

Accordingly, this case will be remanded to the Commissioner for the limited purpose of determining the severity of Hamilton's mental impairments, and whether, if under appropriate treatment, Hamilton is capable of performing the jobs reflected in an updated determination of his residual functional capacity.

IV

For the foregoing reasons, both parties motions for summary judgment will be denied, and the final decision of the Commissioner will be vacated and the case remanded for further administrative proceedings pursuant to 42 U.S.C.A. 405(g), sentence four. An appropriate final judgment will be entered.

DATED: November 10, 2010

/s/ James P. Jones
United States District Judge